Good afternoon. The court is taking up the case of People v. Jerry Hudgens. Case number, it's consolidated cases, 425-0155, 425-0156, 425-0157. Counsel for the appellant, if you please state your name for the record. My name is Connor Morley for Mr. Hudgens. Thank you. And counsel for the appellate, if you'll please state your name for the record. David Robinson for the appellate prosecutor on behalf of the state, along with 7-11 law student Benjamin Spicol. Thank you. Counsel for the appellate, you may begin your argument. Good afternoon. May it please the court, my name is Connor Morley on behalf of Mr. Hudgens. This is a case where the state failed to present the necessary evidence to sustain Mr. Hudgens' convictions for DUI, improper lane usage, and armed habitual criminal. And the state's failure to present the necessary evidence connects or corresponds with issues 1 through 3 in the opening brief. The first way the state failed to present the proper or the necessary evidence to sustain Mr. Hudgens' convictions is that it failed to connect Mr. Hudgens to the van. And crucially, it failed to establish that he had the potential or capability to drive the van or operate the van. This is not your typical DUI case where the defendant is seen driving the car or exiting the car or asleep in the car. The only evidence that connected Mr. Hudgens to the van in this case was the officer's testimony that he was outside of the van when they arrived on the scene. They presented no evidence that he was ever inside of the van. As I said before, they presented no evidence that he possessed the keys to the van. None of his belongings were on the inside of the van or they didn't present any evidence that his belongings were on the inside of the van. They also didn't present evidence that the doors to the van were locked or unlocked or whether the engine was running or whether the van was off. On top of failing to connect Mr. Hudgens to the van, they also used improper evidence to connect Mr. Hudgens to the van. Officer West testified that she never saw Mr. Hudgens inside the van. Nobody ever saw Mr. Hudgens inside the van or driving the van. However, Officer West testified three times. She told the jury three times that Hudgens was the driver. She initially said she was going to the scene to connect or to meet with the driver of the van. Then she identified a photographic exhibit of the van and said that it was the van Mr. Hudgens was driving. That photograph was then blown up and shown to the jury again or shown to the jury. It was enlarged and then shown to the jury and she again said that's the van Mr. Hudgens was driving. Were there any objections to that testimony? There was no objection to Officer West's improper testimony. So that is raised as a separate issue as an effective assistance of counsel. Then also just raised as part of the reasonable doubt argument and that they were improperly told that he was driving the van when there was no evidence that he was the driver of the van. Was there evidence presented that he tried to re-enter the van? So correct. There was evidence. Monelle specifically he testified, quote, he wasn't very aggressive about getting into the vehicle, but it appeared like he was trying to. So there was more than once. Yes, twice. He said he tried. He walked towards the van twice. So there wasn't the officer interdicted him and prevented him from doing so. Yeah. One time he said he put his he put his arm out and kind of said, don't go by the van and he stopped. And then the other time he just gave him a verbal verbally said, don't go by the van. I don't want you going back in there. Well, is that some evidence that he was connected to the van? Correct. That is some that is some evidence that he is connected to the van. And we don't argue that it's unreasonable for the officers to assume that Mr. Hutchins drove the van or that it was his van or or any passerby to think that Mr. Hutchins, you know, if someone saw this incident and saw Mr. Hutchins standing outside of the van, they would assume all that there he is. He crashed his van. But that's not what the state's burden was at trial. The state was required to prove beyond a reasonable doubt that Hutchins operated this van. And no reasonable jury, even in the light most favorable to the state, could conclude that he drove the van when there was no evidence presented that he had the capability or potential to operate the van. That's part of the problem, isn't it? Exactly. At that point in time, after they'd been in a wreck, assuming he was or inferring that he was the driver, he probably didn't have the capability of driving the van. Well, the state never proved that he ever had the capability to drive the van. I understand your point. Thank you, Justice. And one more point on that is even if he was walking towards the van, but the van, but the doors were locked, you know, I mean, then he couldn't have entered the van anyway. So the state really is about the state's inability to connect them to the van. The second way that the state failed to present the proper evidence is that it failed to establish that Mr. Hutchins was intoxicated to the point that he could not operate the vehicle safely, which is the subsection that they charged him under, the subsection of DUI that they charged him under. The only evidence that they presented was that Mr. Hutchins had PCP and cocaine metabolite in his urine. They didn't present any evidence about the effects of those drugs, about how much of those drugs need to be in someone's system for them to feel the effects, or how much of the drugs were actually in Mr. Hutchins' system. And that evidence is crucial in this case because there was no evidence of unsafe driving. As I discussed before, nobody ever saw Mr. Hutchins driving in an unsafe manner, and the damage to the van doesn't suggest that he was driving in an unsafe manner. The state even admits that the damage to the van was consistent with him blowing a tire. Officer Mugnelli also testified that the tire was deflated. So there's no evidence establishing that he was driving unsafely. And because there was no evidence establishing that he was driving unsafely, the state had to do more than just prove that he had PCP in his urine. It had to prove how much PCP was in his urine and how much needed to be in his urine for him to feel the effects of those drugs. The final way the state failed to establish the necessary evidence is with regard to the chain of custody. As the state knows, or as this court knows, the state is required to present a prima facie case that is unlikely that there was tampering or substitution, and then the burden shifts to the defendant to prove actual evidence of tampering or substitution. And here the state's evidence proves, affirmatively establishes, that there was tampering or substitution. Mr. Hutchins gave his blood and urine at the hospital, and the vials of blood and urine were contained in a standard white cardboard DUI box, DUI kit box. That evidence was then taken back to the police department and put in the evidence locker. Detective Reed, a few days later, I think a week or so later, Detective Reed then testifies that he gets that box from the evidence locker and takes it to a lab in Rockford. When he picks it up from the lab in Rockford, 10 days later, it is no longer in the white box. It is in a sealed plastic bag. So the blood and urine is now in a sealed plastic bag. And an employee from the lab in Rockford testified that that's their procedure. When they get it in a box, for whatever reason, they change it to this bag. Detective Reed also testified that because it was in this new plastic bag, the inventory number was gone. So he assigned a new, different inventory number. And his exact quote is, in response to asking if the numbers matched, he says, the box sent to the lab had a tag similar to the one that's on that bag with a different evidence item number. Because I didn't get the box back, I created a new evidence item and placed a new tag on that bag. So he establishes that he creates a new evidence number and puts it on this clear plastic bag. And then he takes it back to the South Beloit Police Department and puts it in the evidence locker. So the last thing we hear about it is that it's in a clear plastic bag in the evidence locker. The next evidence that the state presents about his blood and urine is that it shows up in Chicago in a white box and is tested and there's PCP in his urine. There's no evidence to explain that discrepancy, to explain why it went from a bag to a box. And the only explanation for it is that it was either tampered with, either someone opens the plastic bag, took the blood and urine out and put it in a different, in the white box and then sent it to the lab. Or it was substituted in that somebody sent the wrong evidence somewhere. The wrong evidence went to the lab in Rockford or the wrong evidence went to the lab in Chicago. There's no other explanation for this. It doesn't necessarily mean that there was anything nefarious going on, that anyone did anything wrong or was tampering with the evidence. But it shows that the evidence was not always in, you know, there's a question. How did that happen? Why did it go from one place to another? Who did it? It raises many questions about the chain of evidence, the chain of custody. And as a result, the judge abused his discretion in allowing that evidence into evidence and allowing the testing into evidence. So in all, the state failed to connect Mr. Hutchins to the van, which requires an outright reversal of all of his convictions. It failed to establish that he was intoxicated to the point that he could not drive the van safely, which requires an outright reversal of the DUI conviction. And it failed to lay or failed to establish a proper chain of custody, which requires remand on the DUI conviction. If there are no further questions, I'll save the remainder of my time for rebuttal. Council, I just want to clarify an issue, I guess I'll say, is I believe in your brief, you note after testing in Rockford. Can you direct me to the part of the record that indicates specifically that the items were tested in Rockford? No, the evidence is not. There's no evidence that the items were actually tested in Rockford. We don't know what happened to the blood and urine when it went to Rockford or why it was sent to the Rockford lab. It is simply and if I did say testing in Rockford, I'm sorry that I must have misspoke or there's no evidence. It was just we just know that Reid dropped it off at the lab in Rockford and then picked it up in the plastic bag. We don't know what happened while it was at the lab in Rockford. OK, thank you. I take it this argument was not presented to the trial court. No, this argument was this argument was preserved. There was an objection to the chain of custody in the trial court, and then it was also in the post-trial motion. Is there and if it's on the record, I apologize, is there evidence from when it was when he assigned that new number in the bag? And then, you know, when it ends up in Chicago, do the numbers match? Oh, I'm sorry. No. So when it arrives in Chicago, it has the original inventory number. So instead of having that new inventory number that Detective Reid said he assigned it, it has the original inventory number. And this is from there's photographic exhibits of the box that arrives in Chicago. And it has the same inventory number that how it's established in the record is the employee from the Rockford lab testifies to the actual number. And then on the photographs that the tech in Chicago said he took, it has that same number that the original inventory number. So the inventory number actually causes more more confusion about what happened or where where this new inventory number went. And those that packaging. Thank you. Seeing no other questions from the panel council, you'll have time in rebuttal. Thank you. Counsel for the appellee, you may proceed with your argument. May it please the court, counsel. I'm Ben Spickle, a 7-11 student here on behalf of the state of Illinois with the state attorney's appellate prosecutor's office. I'd like to begin with the chain of custody issue that we just ended on. The state established a chain of custody sufficient for the admission of the blood and urine evidence for the sufficient for the test results to be admitted into evidence by the judge and at the time. Evidentiary rulings such as this should not be disturbed on appeal, absence, evidence of abuse of discretion by the trial court. This abuse of discretion standard is when the decision made by the trial court was arbitrary, fanciful or unreasonable to the point that no reasonable person would agree with it. As noted, this testimony was heard at trial and there was inconsistencies in the chain of custody that was presented. However, contrary to defense counsel's statement that this is the only explanation is the tampering with or substitution of this evidence, there are much simpler explanations for what occurred during the transfer of this evidence. Namely, that there were several years between the testimony that was at trial and the events that made up the chain of custody. The trial court does not necessarily have to entertain speculation of substitution or tampering with the evidence. And there was nothing presented at trial that went further than mere speculation. And when there's a statement that the only explanation for this is tampering or substitution, there's a much simpler explanation, which is mere confusion on the fact of on the part of the testifiers to the chain of custody. As to the inventory and the changes of the boxes that the evidence was placed into the box and bag themselves are not the evidence that was objected to here. It was the vials of the blood and urine themselves that gave rise to the blood and urine tests that were admitted at trial. These themselves, and it seems from the record that the judge, having listened to this objection and having considered it, found that the fact that these vials were consistent over time was sufficient to meet the standard that a reasonable person would allow the evidence to be admitted. Once the evidence was admitted, these objections to the evidence go to the weight of the evidence given to the jury rather than the admissibility of the evidence itself. The weight given to the jury was supported and that this testimony was heard back to back in very short succession by the jury. They could observe the imperfections in the chain of custody. They heard nothing about any type of conspiracy or effort to substitute or tamper with the evidence during any part of any testimony. And they could infer that any inconsistencies may have been due to the lapse of time in between the chain of custody being established and the testimony that was at that trial. The state does not have the burden of maintaining a perfect chain of custody in order for the evidence to be admitted. There does not need to be testimony at every part and every transition that the evidence goes through or goes between different receptacles or different places. It does not need to foreclose all speculation about evidence tampering or substitution conspiracies. And it must simply be under the control of authorized personnel at all times, which the state readily met in this case. When this is not made out by the defense, then all of these attacks on the evidence itself, as noted, goes to the weight of the evidence rather than its admissibility. So for this, the decision of the trial court to admit the evidence should not be disturbed. If I could for just one moment, I just want to clarify a couple of things with the record. I believe the defendant solely objected on the grounds that the evidence did not show how the DUI kit got from Rockford to Chicago at the trial court level. It doesn't appear to me that there were any arguments about the changing in packaging before the trial court. Is that accurate, from the bag to the box? Yes, Your Honor. I think the transition from the bag to the box and the transfer of it from Rockford to Chicago are of one type to some extent, and that when it was transferred between the labs, part of that transfer seemed to involve it being replaced in a different receptacle. So they were, in part, part of the same issue that was being objected to. So you believe that was developed at the trial court level, the issue of the packaging? The record, Your Honor, is somewhat unclear as to the trial defense counsel clearly saw that there was these inconsistencies in the testimony that were brought up with the judge. As to the transfer or whether it was due to the changes in the packaging were both somewhat developed, in my view. But it was clear that the point being made was that there was deficiencies they wanted to bring up with the chain of custody from the testimony that was presented. Thank you. So turning then to the first issue brought up, which is whether the state presented sufficient evidence to link defendant to the van. The testimony that was offered was offered reasonable inferences to the jury that they could have reasonably made to link defendant to the van. These were inferences that were made by the jury. And reasonable inferences, the jury does not have to entertain every possible inference that they could make from the evidence presented to them. Rather, they have to only make reasonable inferences that are supported by the evidence presented to them. As we note, in weighing evidence, a trier of fact is not required to disregard inferences which flow normally and need not seek out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. The indirect evidence offered here was, of course, that a defendant was found next to the van, was acting odd and confused, was, as you noted, tried repeatedly to reenter the van. The van was in a place inconsistent with it simply being come upon by the defendant. He could not have walked up to it. It was on a highway overpass. And the van was facing the wrong direction, facing into traffic, and it was involved in a one-car accident, which combined with the evidence of the defendant's intoxication could lead the jury to make a reasonable inference that it was his van that he had driven to that location. We would also note that the possession of the firearm, the armpitrial criminal, is consistent regardless of whether the defendant is found to have driven the van. He obviously had some relationship with the van. As noted, he tried to reenter the van when he was discovered on the bridge. This meets the requirements noted in the brief of exclusive and immediate control over the van that contained the firearm. And this is another reasonable inference made by the jury that he had some relationship with the van sufficient to find that he had control of the firearm discovered within. Getting to the question of whether Officer West's testimony was improper, the state would note that this fails at three specific parts. The first is that West's testimony was not in and of itself improper. It was under Illinois Rule of Evidence 701, rationally based off of West's observations. As defense counsel noted, this was a reasonable assumption to make. It wasn't made completely off of speculation, so much so that trial defense counsel did not object to it at the time. It was not based off of any specialized knowledge that Officer West was bringing to this, and it was required for the jury to understand why Officer West was going into the car and eventually found the firearm within the car. However, even if this testimony was not proper, this has been raised to the level of a Strickland violation. However, it's very clear to see that the non-objection to this testimony was a type of trial strategy, which is presumptively does not fall under a Strickland ineffective assistance of counsel. This is because an objection to West's testimony would have been an invitation for West to testify why she was stating that a defendant had driven the van. It was an invitation to show to the jury during her testimony why this was a particularly reasonable inference to make, reiterating much of the evidence that was already leading to the inferences that the jury would eventually make in supporting the conviction. Finally, in the second prong of the Strickland standard, even if West's testimony was improper, it was simply duplicative of the other evidence presented indicating that Hudgens was indeed the driver of the van. So even if this had been timely objected to and had been excluded by the trial court, it was simply duplicative of other evidence and would not have made a difference sufficient to have changed the result of the trial. Moving to the final Second Amendment objection, I would just simply note that every time the Illinois appellate courts have reviewed as a challenge to the armed habitual criminal statute, this has not succeeded that it consistent with all of those previous rulings that this court would be consistent with them in saying the armed habitual criminal statute is constitutional under the Second Amendment. Noting that, I would also state that under U.S. v. Rahimi, Rahimi was not a felon but was rather subject to a civil order of protection, which was found by the Supreme Court 8-1 to disallow him from possessing firearms. In this case, we have a felon who is disallowed from possessing a firearm. Felony convictions are done with a significantly higher amount of due process than civil orders of protection. As such, while Rahimi did not touch on the issue of felon in possession laws or armed habitual criminal laws like this specifically, it would be odd and unreasonable for it to apply to people with orders of protection and not apply to felons. Indeed, the Supreme Court, whenever it hears Second Amendment cases, goes to great length and dicta to note that its rulings presumptively do not apply to felons. Finishing on the Second Amendment issue, I would note that, as such, felons are both not considered a part of the people that the Second Amendment is presumed to cover and that there is a strong history and tradition of armed habitual criminal statutes like that in the state of Illinois, excluding felons from possessing firearms. And that has been discussed extensively by Illinois appellate courts before and should be upheld here as well. If there are no further questions, I would just conclude that for these reasons and for the reasons in the state's brief, we would ask that the court affirm the judgment of the trial court. Thank you. Thank you, counsel. Seeing no other questions, counsel for the appellate. Any rebuttal? Yes, thank you. Starting with the chain of custody, the state attempts to explain the issues of the chain of custody by the time of the testing and trial. Well, this doesn't make a ton of sense because the testing was done within three months of when the evidence was collected. So the testing, he submitted his blood and urine at the end of October of 2021. The testing was concluded December 1st of 2021. So the chain of custody issues happened within a three month time span. Then the evidence sat there for two years or however long until trial happened. So none of these issues came from the timeframe between when it started and when it was collected in trial. Also, the time between when the evidence was collected and trial doesn't excuse the state's burden to establish a chain of custody. It also attempts to explain it by whether that the trial court heard this evidence and said that it was okay and it didn't abuse its discretion. The objection happens when the evidence tech in Chicago is about to testify to the results of the blood and urine. So counsel objects. Let me stop there because I do think it's an important point to clarify. Did the defendant object when the forensic toxicologist testified about the results on the blood? So the. Or just on the admission of the exhibit containing the blood and urine samples and the testimony about the results on the urine being related just to the transfer from Rockford to Chicago. I can't recall exactly whether. My recollection is that defense counsel objects right before the technician says there was in his system. So, right before the evidence is coming out, that is going to show that there was drugs in his system. I don't believe if the, if the testified that there was nothing in his blood, or they, I don't, I'm not even exactly sure if they tested his blood and they testified that there was not, there was either nothing in his blood or. That they didn't test it at all, but the only results showing any substance in his system came from the urine. There was no. No drugs in his blood. There was no evidence that there was drugs in his blood. I don't remember if that's because they didn't test it or if that's because they, they testified that there was nothing in there. So, when defense counsel objects, the evidence technician in Chicago doesn't have the information to sure up this chain of custody. The evidence technician in Chicago couldn't have said, oh, I know why the evidence, why the blood and urine went from a bag to a box and I know how it got to the Chicago lab. So, this was really on the prosecutor to establish what happens between the Rockford lab and the Chicago lab. When the objection was made, there wasn't really an explanation that the evidence technician could have given to the court to make it, to make it understand why this happened. There's also a suggestion that this is just confusion, you know, confusion by the witnesses. The only way that you can get around this is you have to say two witnesses testified to the wrong thing. The witness in Chicago must not have meant what they said when they said that they received a box and Detective Reed must have not meant what he said when he testified that he put it in a bag. This is not even like one witness getting something wrong can explain how this happened. Multiple witnesses would have to be wrong about what they testified to for this to be a confusion between witnesses to explain what happened. And then the other idea that this was under, all the state had to do was show that it was under officer's control the whole time. It didn't show that. That's the issue. We don't know what happened from the time it got, it went from Rockford to Chicago. If they shipped it, which there's a shipping label on it, then it wasn't in the officer's possession. It was being shipped by whoever shipped it. You know, we don't know what happened between the time it left Rockford and arrived in Chicago. So the state didn't prove that it was under police possession the whole time or technician's possession. You know, they didn't prove that it was under safe control the whole time. And then quickly, I see I don't have too much time left. Just the connection to the van. Again, it's a reasonable assumption that someone can say, oh, this person standing outside of the van drove the van. There's a minimum threshold that the state has to prove when they charge someone with DUI, when they charge someone with driving a van. And they have to show that there was potential to drive the van. If there's no potential to drive the van, if there's no keys, if they never show that there's any way that this defendant drove the van, then they haven't established beyond a reasonable doubt. And even in the light most favorable to them, no reasonable juror can conclude that they drove the van because there's no potential for them to drive the van. So if there are no further questions, we would ask that this court reverse all of the reverse all of Mr. Hutchins convictions under issue one. Reverse just the DUI under the second part of the sufficiency claim or remand for a new trial under the chain of custody claim. Thank you. Thank you. The court will take this matter under advisement and the court stands in recess.